UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE FERNANDEZ, individually and as personal representative of Samuel Rosario,

    Plaintiff,

v.

ORLANDO HOUSING AUTHORITY,
RHONDA PIERCE, and ELLIS HENRY,

    Defendants.
_____/

Case No. 6:15-cv-1341-Orl-40DAB

**DISPOSITIVE MOTION**

## DEFENDANT ORLANDO HOUSING AUTHORITY AND DEFENDANT RHONDA PIERCE'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

COME NOW, Defendant Orlando Housing Authority ("OHA") and Defendant Rhonda Pierce ("Pierce"), by and through their undersigned counsel, hereby file and serve their Motion to Dismiss and Incorporated Memorandum of Law, and in support thereof state as follows:

### I. BACKGROUND

This action arises out of Plaintiff's father's tenancy in an apartment provided in connection with OHA under the United States Department of Housing and Urban Development's Housing Choice Voucher Program (commonly known as the Section 8 Program). Plaintiff is a surviving child of Samuel Rosario and the appointed personal representative of his estate. (Compl. ¶¶ 4, 38.) As alleged in Plaintiff's complaint, Rosario was a tenant of Redding Gardens, a public housing property owned and managed by the Sanford Housing Authority. (Compl. ¶ 12.) In 2011, OHA began managing the Sanford Housing Authority's public housing program. (Compl. ¶ 13.) Rosario moved to Logan Heights Apartments, a privately owned, tax credit, multi-family development, when Redding Gardens was proposed to be remodeled or demolished.

1

(Compl. ¶¶ 13-14.) Rosario's unit at Logan Heights was a one-bedroom apartment on the third story. (Compl. ¶ 14.) On October 11, 2011, Plaintiff allegedly contacted OHA's Relocation Specialist and informed her of Rosario's "condition, his inability to live independently or on the third floor, and the request to provide him the necessary assistance." (Compl. ¶ 18.) On November 8, 2011, a doctor's statement was provided to OHA stating that Rosario was legally blind and should not live alone. (Compl. ¶ 19.) Plaintiff alleges that additional documentation was provided from Rosario's eye doctor dated October 24, 2011. (Compl. ¶ 19.) Plaintiff alleges that OHA took no action in response. (Compl. ¶ 19.)

On February 24, 2012, the Social Security Administration determined that Rosario was not disabled, and Rosario appealed this decision. (Compl. ¶ 25.) Rosario attended his annual recertification exam with OHA on June 8, 2012 and allegedly expressed a need for a first-floor unit that could accommodate a live-in aide. (Compl. ¶¶ 20-21.) Rosario had already completed a renewal lease and was unable to move at that time without proper documentation from a doctor and completion of a mutual rescission form. (Compl. ¶ 21.) Plaintiff alleges that on August 28, 2012, a mutual rescission agreement between Logan Heights Apartments and Rosario was faxed to Latoya Barrett at OHA along with a doctor's statement that Rosario needed to live on the first floor due to his brain disorder and abnormal gait. (Compl. ¶ 22.) However, Plaintiff alleges that Rosario did not move at that time because OHA was reportedly unable to assist with moving expenses. (Compl. ¶ 23.)

Rosario attended his next annual recertification appointment, accompanied by Plaintiff, on June 25, 2013. (Compl. ¶ 24.) Plaintiff expressed Rosario's need for a two-bedroom voucher in order to accommodate a live-in aide and Rosario's need to no longer live in a third-floor apartment. (Compl. ¶ 24.) Plaintiff was allegedly told that Rosario was not disabled. (Compl. ¶

24.) After this meeting, OHA provided Plaintiff with a Disability Verification Form and Plaintiff provided OHA with documentation from Rosario's primary care doctor stating that under the definitions provided, Rosario was disabled. (Compl. ¶ 26.) OHA allegedly responded on August 16, 2013 through its Section 8 Director, Rhonda Pierce, and stated that Rosario did not meet the definition of disabled and that his request for accommodation would not be granted. (Compl. ¶ 27.) On the same date, Plaintiff and Rosario filed a Fair Housing Complaint against OHA. (Compl. ¶ 29.) On August 19, 2013, OHA reaffirmed the denial of Rosario's requested accommodation. (Compl. ¶ 30.)

On November 13, 2013, Rosario received a letter from the Social Security Administration stating that his SSI Disability benefits had been approved retroactively to September 2011. (Compl. ¶ 32.) Plaintiff met with a housing specialist at OHA on December 4, 2013. (Compl. ¶ 33.) During this meeting, Plaintiff was provided with a change of income form. (Compl. ¶ 33.) Plaintiff allegedly requested an accommodation for Rosario and was informed that she would need to complete the reasonable accommodation process again. (Compl. ¶ 33.) Plaintiff does not allege that she undertook to re-initiate the reasonable accommodation process or to complete a mutual rescission of Rosario's lease that was in effect at the time. On May 29, 2014 Rosario was found dead in his apartment. (Compl. ¶ 36.) Rosario was unmarried at the time of his death and is survived by four children—Plaintiff, Samuel Rosario, Steven Rosario, and Stacie Quinones. (Compl. ¶ 38.) Plaintiff was appointed personal representative of Rosario's estate. (Compl. ¶ 4.)

On August 13, 2015, Plaintiff filed her complaint. In Count I, Plaintiff brings a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, on her own behalf and as personal representative of Rosario against OHA. In Count II, Plaintiff brings claims under the

Florida Fair Housing Act, Section 760.20, Florida Statutes, and the Fair Housing Act, 42 U.S.C. § 3601, on her own behalf and as personal representative of Rosario against all defendants. In Count III, Plaintiff brings a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, on her own behalf and as personal representative of Rosario against OHA. In Count IV,[1] Plaintiff brings retaliation claims under the Florida Fair Housing Act, Section 760.20, Florida Statutes, and the Fair Housing Act, 42 U.S.C. § 3601, on her own behalf and as personal representative of Rosario against OHA. OHA and Pierce now move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Evaluation of a complaint requires a two-step inquiry: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The court, however, is not bound to accept as true a legal conclusion presented as a factual allegation in the complaint. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "'[D]etailed factual allegations'" are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[1] Count IV is mislabeled as a second Count II.

4

III. ARGUMENT

*A. Plaintiff Cannot State any Claim in her Individual Capacity*

Each of Plaintiff's claims should be dismissed to the extent that she asserts those claims in her individual capacity. The Rehabilitation Act prohibits the exclusion of a disabled person from participation in, or being denied the benefits of, any program or activity receiving federal financial assistance and discrimination against any disabled person with respect to such program or activity. *See* 29 U.S.C. § 794(a). "To state a prima facie case under the Rehabilitation Act, the Plaintiff must allege that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified to participate in the activity or program; (3) the activity or program receives federal financial assistance; and (4) she was denied the benefits of or subject to discrimination under the program or activity solely by reason of her disability." *Robinson v. Gorman*, 145 F. Supp. 2d 201, 206 (D. Conn. 2001). A failure to accommodate amounts to discrimination. *See* 28 C.F.R. § 41.53; *Wood v. President and Trustees of Spring Hill College*, 978 F.2d 1214, 1222 (11th Cir. 1992); *see also Wis. Comm. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006) (noting that the requirement to reasonably accommodate under the Rehabilitation Act mirrors the FHA's reasonable accommodation requirement). The Rehabilitation Act defines disability as it is defined in the ADA and FHA, or to the extent not inconsistent with the ADA, "a physical or mental impairment that constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(9).

The FHA prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal

opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B). Courts interpreting and applying Florida's FHA deem authority concerning the federal FHA as instructive and persuasive due to the similarity in language and purpose between the two acts. *See Loren v. Sasser,* 309 F.3d 1296, 1299 (11th Cir. 2002); *Dornbach v. Holley,* 854 So.2d 211, 213 (Fla. 2d DCA 2002).

A successful failure-to-accommodate claim under the FHA has four elements. To prevail, a plaintiff must prove that (1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation. *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 13-12625, 765 F.3d 1277, 1285 (11th Cir. 2014). "The FHA's reasonable accommodation provision requires only those accommodations that may be *necessary* . . . to afford *equal* opportunity to use and enjoy a dwelling." *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1226 (11th Cir. 2008) (quotation marks omitted) (emphasis in original). Equal opportunity means that a disabled person must be afforded the same opportunity to use and enjoy the dwelling as a non-disabled person. *Id.*

Similar to the FHA, Title II of the ADA provides that a refusal to make reasonable accommodation with respect to any service, program, or activity of a public entity may constitute discrimination. *See* 42 U.S.C. § 12132; *Wolfe v. Fla. Dep't of Corr.*, No. 5:10-cv-663-Oc-PRL, 2012 WL 4052334, at *4 (M.D. Fla. Sept. 14, 2012). "Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000). "[T]o state a Title II claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise

discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.,* 480 F.3d 1072, 1083 (11th Cir. 2007); *see also* 28 C.F.R. § 35.130(b)(7).

Both the FHA and Florida FHA also prohibit retaliation. The FHA provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Similarly, the Florida FHA provides: "It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37." Fla. Stat. § 760.37. To state an FHA retaliation claim, a plaintiff must sufficiently allege: (1) he or she is a member of a class protected by the FHA; (2) he or she exercised or enjoyed a right protected under the FHA; (3) the defendant's conduct was at least in part intentional discrimination; and (4) the defendant's conduct constituted coercion, intimidation, threat, or interference on account of having exercised a right protected under the FHA. *See United States v. Sea Winds of Marco, Inc.*, 893 F. Supp. 1051, 1055 (M.D. Fla. 1995); *see also Sofarelli v. Pinellas Cnty.,* 931 F.2d 718, 722 (11th Cir. 1991). Further, a retaliation claim under the FHA requires that allegedly retaliatory conduct be directed at the complainant. *See id.* at 1056.

In this case, Fernandez does not allege that she was a qualified individual with a disability. Further, she does not allege that she ever resided in or sought to reside in any dwelling owned or managed by OHA. Nor does Fernandez allege that she sought any sort of accommodation for herself. Fernandez does not allege that she was ever subject to any

7

retaliation with respect to any dwelling of her own.[2] Nor does Plaintiff allege that she was subjected to any allegedly retaliatory conduct by OHA that was directed towards Plaintiff. Instead, Plaintiff alleges that she is the personal representative of the estate of Samuel Rosario and is one of Samuel Rosario's four surviving children. With respect to interactions with OHA and any of its officers, agents, or employees, Plaintiff was involved in the events and circumstances that gave rise to this case only as a representative of Rosario. Therefore, Plaintiff has failed to state any individual claim under the FHA, Florida FHA, ADA, or Rehabilitation Act.

In Count I and Count II, Plaintiff appears to attempt to bring a claim for loss of consortium, loss of society, or both against OHA.[3] That is, Plaintiff attempts to bring her own claims that, as alleged, are derivative of the claims she brings for alleged violations of Rosario's civil rights as the personal representative of his estate. However, Plaintiff cannot proceed in this manner. "The law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights." *Godby v. Electrolux Corp.*, No. CIV. 1:93-CV-126-ODE, 1994 WL 470220, at *2 (N.D. Ga. May 25, 1994). Federal courts have "almost unanimously have dismissed loss of consortium claims based upon federal civil rights violations." *Brown v. Youth Services Int'l of Baltimore,* 904 F. Supp. 469, 470 (D. Md. 1995); *see also Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) (parents could not assert § 1983 claim for loss of society due to death of adult son); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) ("[N]o cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's

---

[2] As discussed further below, Plaintiff does not sufficiently allege any retaliation. Plaintiff alleges that OHA merely continued to fail to accommodate Rosario.
[3] Plaintiff also alleges that her siblings have suffered "irreparable loss, mental anguish and injury including, damages, including damages for permanent loss of services, comfort, companionship, and society." (Compl. ¶¶ 55, 69.) However, Plaintiff's siblings are not named as plaintiffs in this action.

family members."); *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) (declining to recognize wife and minor child's Fourteenth Amendment claim for loss of love and support of their deceased husband and father); *Torres v. Orange Cnty., Fla.*, No. 6:99-cv-1662-Orl-19B, 2000 WL 35527256, at *1 (M.D. Fla. May 16, 2000) (only the purported victim, or his estate's representative on his behalf, may prosecute a § 1983 claim; conversely, no cause of action may lie under § 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the alleged victim's family members); *Wahhab v. City of New York.*, 386 F. Supp. 2d 277, 292 (S.D.N.Y. 2005) ("[Section] 1983 does not support derivative claims for loss of consortium."). This Court has previously held that a loss of consortium claim is not derivative of a claim for discrimination based upon disability brought under the ADA. *Cook v. Robert G. Waters, Inc.*, No. 96-1459-CIV-T-17E, 1996 WL 685842, at *1 (M.D. Fla. Nov. 13, 1996). Similarly, Title VII does not provide a basis for derivative liability for loss of consortium. *See Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000); *Cook*, 1996 WL 685842, at *1. Therefore, this Court should hold that damages for a family member's emotional distress, loss of consortium, and loss of society are not available under the ADA, Rehabilitation Act, FHA, and Florida FHA.

For each of these reasons, Plaintiff cannot bring claims under the ADA, FHA, Florida FHA, ADA, and Rehabilitation Act on her own behalf. Therefore, Plaintiff's individual claims should be dismissed with prejudice.

### B. Plaintiff Cannot State a Claim for Retaliation on Behalf of Rosario

Plaintiff's retaliation claims asserted on behalf of the estate of Rosario in Count IV should be dismissed because Plaintiff cannot identify any retaliatory conduct separate from the initial alleged failure to accommodate and because none of the conduct alleged is sufficiently

9

egregious to constitute retaliation. The FHA provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Similarly, the Florida FHA provides: "It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37." Fla. Stat. § 760.37.

In order to state a retaliation claim, a plaintiff must allege conduct that rises to the level of coercion or intimidation under the FHA and demonstrate a nexus between the complained-about conduct and the FHA protected activity. *Wood v. Briarwinds Condo. Ass'n Bd. of Directors,* 369 F. App'x 1, 2 (11th Cir. 2010). An FHA retaliation claim must be based upon allegedly retaliatory conduct that is egregious. *See id.*; *Solodar v. Old Port Cove Lake Point Tower Condo. Ass'n, Inc.*, No. 12-80040-CIV, 2012 WL 1570063, at *8 (S.D. Fla. May 2, 2012). For example, the Eleventh Circuit Court of Appeals permitted an FHA retaliation claim to proceed when the plaintiff alleged his neighbors left him a threatening note to "break [him] in half" if he did not leave the neighborhood, ran up to his truck and hit it while shouting obscenities and spitting at the plaintiff in retaliation for attempting to sell property in the neighborhood to a purchaser who was a member of a protected class under the FHA. *Sofarelli v. Pinellas County,* 931 F.2d 718, 722 (11th Cir. 1991). Other courts which have permitted FHA retaliation claims to proceed involved similar egregious conduct. *See, e.g., United States v. Sea Winds of Marco, Inc.,* 893 F. Supp. 1051, 1055 (M.D. Fla. 1995) (complaint stated a claim under

the FHA by claiming the corporate defendant instituted a policy requiring identification wristbands to be worn but the policy was only enforced against Hispanic tenants and Hispanic tenants were selectively monitored and derogatory remarks made against them); *Johnson v. Smith,* 810 F. Supp. 235, 238-39 (N.D. Ill. 1992) (motion to dismiss denied when the plaintiff alleged that the defendants burned a cross on the plaintiff's property); *People Helpers Foundation v. City of Richmond,* 781 F. Supp. 1132, 1133 (E.D. Va. 1992) (by pleading neighbors made derogatory comments, gathered other neighbors together in a threatening manner and complained to the police that they did not want these "types" living in the building, the plaintiff adequately pled a retaliation claim under FHA). These cases also reflect that the alleged retaliation must be separate and distinct from any alleged discrimination. *See, e.g., Solodar*, 2012 WL 1570063, at *8

In this case, Plaintiff alleges that OHA retaliated against Rosario by (1) requiring that he complete the reasonable accommodation process again (following passage of time since a previous denial) after receiving a letter from the Social Security Administration notifying him that his application for benefits had been approved retroactively and (2) continuing to deny Rosario's requested accommodation after Plaintiff filed a complaint against OHA. The allegations contained in Plaintiff's complaint make it clear that Rosario was not subjected to any sufficiently egregious intimidation, threat, coercion, or interference with his rights under the FHA or Florida FHA. At most, Plaintiff's complaint indicates that OHA continued to deny Rosario's requested accommodations. Assuming the truth of this allegation, such conduct does not give rise to a retaliation claim—particularly not one *in addition to* a failure-to-accommodate claim. Therefore, Count IV of Plaintiff's complaint should be dismissed. *See Solodar*, 2012 WL

1570063, at *8 (dismissing plaintiff's FHA retaliation claim as an attempted "recast" of the plaintiff's failure-to-accommodate claim).

*C. Plaintiff Cannot Seek Punitive Damages from OHA*

Count II and Count IV of Plaintiff's complaint should be dismissed because Plaintiff impermissibly seeks punitive damages against OHA. Count II contains claims under the FHA and Florida FHA for alleged failure to accommodate. Count IV contains claims under the FHA and Florida FHA for alleged retaliation. Despite the general availability of punitive damages on FHA claims, punitive damages may not be awarded against a municipality. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Punitive damages are allowed against a municipality if expressly allowed by statute. *Id.* at 260 n.21. However, Congress has not authorized awards of punitive damages against municipalities under the FHA. *See Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1158 (C.D. Cal. 2001). "The FHA's general provision regarding the availability of punitive damages is simply not sufficient under *Fact Concerts*." *Id.*; *see Hispanics United of DuPage County v. Village of Addison,* 958 F. Supp. 1320, 1332-33 (N.D. Ill. 1997) (a plaintiff to an FHA claim cannot recover punitive damages from a municipality); *see also Brooks v. Seattle Hous. Auth.*, C 12-0878-JCC, 2013 WL 5493049, at *2 (W.D. Wash. Oct. 1, 2013) (same); *Brooker v. Altoona Hous. Auth.*, 3:11-CV-95, 2013 WL 2896814, at *27 (W.D. Pa. June 12, 2013) (same). Therefore, Plaintiffs cannot seek punitive damages against OHA under the FHA.

Courts interpreting and applying Florida's FHA deem authority concerning the federal FHA as instructive and persuasive due to the similarity in language and purpose between the two acts. *See Loren v. Sasser,* 309 F.3d 1296, 1299 (11th Cir. 2002); *Dornbach v. Holley,* 854 So.2d 211, 213 (Fla. 2d DCA 2002). As with the FHA and Florida FHA, Florida courts interpret and

apply the Florida Civil Rights Act in accordance with cases construing Title VII of the Civil Rights Act of 1964. *See Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1363 n.7 (S.D. Fla. 2013). Because Title VII does not allow for punitive damages against a governmental entity, the *Shedrick* court held that the Florida Civil Rights Act does not allow for punitive damages against a governmental entity. *See id.* at 1360 (citing *Klonis v. Dept. of Revenue*, 766 So. 2d 1186, 1190 (Fla. 1st DCA 2000); *see also Southern Alliance Corp. v. City of Winter Haven*, 505 So. 2d 489, 495 n.3 (Fla. 2d DCA 1987) (following *Fact Concerts* and noting that a governmental entity is immune from liability for punitive damages under 42 U.S.C. § 1983). Additionally, section 768.28(5), Florida Statutes, bars an award of punitive damages on claims asserted against governmental entities in Florida: "The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment." Therefore, Plaintiffs cannot seek punitive damages against OHA under the Florida FHA.

For each of these reasons, Count II and Count IV of Plaintiff's complaint should be dismissed to the extent that Plaintiff seeks punitive damages against OHA.

## IV. CONCLUSION

WHEREFORE, Defendant Orlando Housing Authority and Defendant Rhonda Pierce respectfully request that the Court enter an Order dismissing Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for any other relief the Court deems just and proper.

              Respectfully submitted,

              */s/ Frank Mari*
              Michael J. Roper, Esquire

        Florida Bar No.: 0473227
        mroper@bellroperlaw.com
        Secondary: phermosa@bellroperlaw.com
        Frank M. Mari, Esquire
        Florida Bar No.: 93243
        fmari@bellroperlaw.com
        Secondary: sstratton@bellroperlaw.com
        Bell & Roper, P.A.
        2707 E. Jefferson Street
        Orlando, FL  32803
        (407) 897-5150
        (407) 897-3332 (fax)
        Counsel for Defendant Orlando Housing Authority
        and Defendant Rhonda Pierce

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 24th day of September, 2015, a true and correct copy of the foregoing has been filed with the Clerk of Court via the Court's CM/ECF system, which will send and electronic notice to all counsel of record.

        */s/ Frank Mari*
        Frank M. Mari, Esquire