**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

STEPHANIE FERNANDEZ, individually and in her capacity as Personal Representative for the Estate of Samuel Rosario,

    Plaintiff,

v.                                      Case No:  6:15-cv-1341-Orl-40DAB

ORLANDO HOUSING AUTHORITY, RHONDA PIERCE, and ELLIS HENRY,

    Defendants.

## **ORDER**

This cause comes before the Court on the following:

1. Defendant Orlando Housing Authority and Defendant Rhonda Pierce's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 16), filed September 24, 2015;

2. Plaintiff's Response to Defendants Orlando Housing Authority and Rhonda Pierce's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 20), filed October 19, 2015;

3. Defendant Ellis Henry's Motion to Dismiss, or in the Alternative, Motion to Strike, and Incorporated Memorandum of Law (Doc. 23), filed October 29, 2015; and

4. Plaintiff's Response to Defendant Ellis Henry's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 26), filed November 11, 2015.

Upon consideration, Defendants' motions are granted in part and denied in part.

**I.   BACKGROUND**[1]

Plaintiff, Stephanie Fernandez, brings this lawsuit on behalf of herself and as the personal representative for the estate of her deceased father, Samuel Rosario. Mr. Rosario was a tenant of a Section 8 public housing complex reserved for elderly and disabled individuals. (Doc. 1, ¶ 12). In 2011, it was determined that the housing complex would be remodeled or demolished. (*Id.* ¶ 13). As a result, Defendant, Orlando Housing Authority ("OHA"), was enlisted to assist the housing complex relocate its residents, including Mr. Rosario. (*Id.*). OHA moved Mr. Rosario to a one-bedroom apartment on the third story of a privately-owned, tax credit, multi-family development. (*Id.* ¶ 14).

On October 3, 2011, Mr. Rosario was hospitalized for delirium. (*Id.* ¶ 17). Upon his release, it was discovered that Mr. Rosario was legally blind. (*Id.*). Plaintiff contacted OHA on October 10, 2011 to relay her father's condition, to express concern that he was living by himself in a third-floor unit, and to request that OHA provide the necessary assistance. (*Id.* ¶ 18). OHA did nothing to address Plaintiff's request. (*Id.*). Over the next month, OHA received additional documentation from Mr. Rosario's doctors confirming that he was legally blind and should not live alone. (*Id.* ¶ 19). OHA again did nothing. (*Id.*).

In June 2012, Mr. Rosario attended an annual recertification appointment with OHA where he reiterated his need to live on the first floor with a live-in aide due to his health condition. (*Id.* ¶¶ 20–21). On August 28, 2012, one of Mr. Rosario's doctors also

---

[1]  This account of the facts is taken from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in considering Defendants' motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

faxed OHA a statement indicating that Mr. Rosario needed to live on the first floor due to a brain disorder. (*Id.* ¶ 22). Around the same time, Plaintiff contacted OHA to request assistance and funding in order to move Mr. Rosario from the housing complex. (*Id.* ¶ 23). OHA replied that there was no funding available and that it could not help in Mr. Rosario's relocation. (*Id.*). Because Mr. Rosario could not afford to move, he remained in the third-floor apartment. (*Id.*). When Mr. Rosario attended his annual recertification appointment in June 2013 with Plaintiff, they again communicated Mr. Rosario's need for a live-in aide and his inability to safely live on the third floor of the apartment complex. (*Id.* ¶ 24). OHA denied the requests, stating that Mr. Rosario did not qualify as disabled. (*Id.* ¶¶ 24–27).

On August 16, 2013, Plaintiff contacted Defendant, Rhonda Pierce ("Pierce"), Section 8 Director with OHA, to request that OHA reconsider its determination that Mr. Rosario was not disabled. (*Id.* ¶ 28). The same day, Plaintiff and Mr. Rosario filed a Fair Housing Complaint against OHA with the Department of Housing and Urban Development. (*Id.* ¶ 29). On August 19, 2013, Defendant, Ellis Henry ("Henry"), Chief Operating Officer of OHA, affirmed OHA's decision that Mr. Rosario was not disabled and, therefore, ineligible for the accommodations he sought. (*Id.* ¶ 30). In his affirmance, Henry revealed that OHA reached its conclusion based on a prior determination by the Social Security Administration in February 2012 that Mr. Rosario was not disabled, notwithstanding that Mr. Rosario had appealed from that decision. (*Id.* ¶¶ 25, 30). However, Henry also stated in his affirmance that OHA would reconsider its decision should Mr. Rosario win his appeal. (*Id.* ¶ 30).

On November 13, 2013, Mr. Rosario received a letter of award from the Social Security Administration indicating that it had reversed its February 2012 decision, found

3

that Mr. Rosario was indeed disabled, and reinstated Mr. Rosario's disability benefits retroactively to September 2011.  (*Id.* ¶ 32).  On December 4, 2013, Plaintiff advised OHA of the Social Security Administration's reversal and requested that her father be immediately moved to a first-floor unit and provided with a live-in aide, consistent with OHA's August 19, 2013 affirmance.  (*Id.* ¶¶ 33–34).  Nevertheless, OHA informed Plaintiff that it would not provide the relief she requested and that she would need to restart the reasonable accommodations process.  (*Id.*).  Plaintiff believes that OHA's refusal to grant an immediate accommodation despite its previous offer to reconsider its position upon Mr. Rosario prevailing on his appeal was in retaliation for the Fair Housing Complaint filed against OHA.  (*Id.* ¶ 34).

On March 19, 2014, Mr. Rosario fell in his apartment, causing injury to his head and bruising to his eyes.  (*Id.* ¶ 35).  Mr. Rosario was admitted to the hospital where he remained for nine days.  (*Id.*).  The day after Mr. Rosario returned home, he was found dead in his kitchen.  (*Id.* ¶ 36).  A police investigation and autopsy concluded that Mr. Rosario had hit his head after experiencing a seizure or fainting and that he died as a result.  (*Id.* ¶¶ 36–37).

Plaintiff initiated this lawsuit on August 13, 2015 by filing a four-count Complaint. (Doc. 1).  The Complaint alleges violations of the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796*l*, the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631, the Florida Fair Housing Act ("Florida FHA"), Fla. Stat. §§ 760.20–.37, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213.  Plaintiff asserts that Defendants' denial of Mr. Rosario's requests for a live-in aide and to move to a first-floor apartment violated these statutes and contributed to his death.  Now before the Court are Defendants' respective motions to dismiss.

## II.   STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.  In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The mere recitation of the elements of a claim are not enough and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material.  *Id.*  District courts must accept all well-pleaded allegations within the complaint as true and read the complaint in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

## III.   DISCUSSION

Between the two motions, Defendants raise four grounds for dismissing, in whole or in part, Plaintiff's Complaint.  First, all Defendants state that Plaintiff cannot maintain claims under the RA, ADA, FHA, and Florida FHA in her individual capacity.  Second, Henry moves to dismiss the Complaint as an impermissible "shotgun" pleading.  Third, OHA and Pierce submit that the Complaint fails to state claims for retaliation against Mr. Rosario under the FHA and Florida FHA.  Fourth, OHA and Henry move to dismiss certain relief sought by Plaintiff.  The Court will discuss Defendants' arguments in the most logical order.

### A.     Whether the Complaint is a Shotgun Pleading

To begin, Henry challenges Plaintiff's Complaint as an impermissible "shotgun" pleading.  (Doc. 23, pp. 10–11).  The Eleventh Circuit recently outlined four types of "shotgun" complaints which require dismissal:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted).  All four categories of "shotgun" complaints are deficient because "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323 (footnote omitted); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Henry contends that the Complaint is guilty of the third and fourth "sins" identified by the Eleventh Circuit in *Weiland*.  Specifically, Henry argues that Plaintiff combines claims arising under the FHA and Florida FHA in a single count and that Plaintiff fails to identify which of the Defendants committed each of the acts or omissions forming the basis of that count.  Regarding the combination of FHA and Florida FHA claims into a single count, while technically not the ideal form of pleading, such comingling is excusable in this context because the FHA and Florida FHA "are substantively identical" and,

therefore, are interpreted and applied in the same manner. *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). As a result, Henry has sufficient notice of what is alleged against him under both statutory schemes. Regarding Plaintiff's purported failure to identify which Defendants committed which acts or omissions forming the basis of the fair housing claims, Henry's concern is unfounded. The allegations throughout the Complaint name which Defendant or Defendants allegedly committed each act or omission complained of. Accordingly, Plaintiff's Complaint will not be dismissed as a "shotgun" pleading.

### B. Whether Plaintiff Can Bring Claims in Her Individual Capacity

Next, Defendants state that Plaintiff cannot maintain individual capacity claims under the RA, ADA, FHA, and Florida FHA. Defendants contend that all four statutes limit the right to bring a cause of action to specific individuals and that Plaintiff is not the type of individual envisioned. (Doc. 16, pp. 5–9; Doc. 23, pp. 5–10). In her responses to Defendants' motions, Plaintiff withdraws her individual capacity claims under the RA and ADA. (Doc. 20, p. 16; Doc. 26, p. 8). These claims will consequently be dismissed and the Court will limit its analysis to whether Plaintiff can state individual claims under the FHA and Florida FHA.

OHA challenges Plaintiff's individual claims on the grounds that Plaintiff has not been the victim of unlawful discrimination or retaliation in connection with her exercise or enjoyment of a protected housing right. However, it is well-established that a plaintiff need not be the individual whose rights under the FHA and Florida FHA were violated to state a claim; "as long as the plaintiff suffers actual injury as a result of the defendant's conduct, [s]he is permitted to prove that the rights of another were infringed." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979). Indeed, in a pair of related

opinions, the Eleventh Circuit recently reviewed Supreme Court precedent and confirmed that the FHA—and, as a result, the Florida FHA—extends a cause of action to all persons who satisfy the minimum requirements of constitutional standing, regardless of whether that person was discriminated or retaliated against.  *See City of Miami v. Citigroup, Inc.*, 801 F.3d 1268, 1275–76 (11th Cir. 2015); *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1274–78 (11th Cir. 2015), *appeal filed*, No. 15-1111 (U.S. Mar. 4, 2016).  Therefore, a plaintiff need only demonstrate three elements to state a claim under either the FHA or Florida FHA: (1) she suffered an injury that is concrete, particularized, and actual or imminent, (2) a causal connection exists between her injury and the defendant's allegedly unlawful conduct, and (3) her injury will be redressed by a favorable decision.  *Bank of America*, 800 F.3d at 1272.  At the pleading stage, these elements are not particularly onerous and will be satisfied by "general factual allegations of injury resulting from the defendant's conduct."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Here, Plaintiff alleges that she assisted Mr. Rosario in the exercise and enjoyment of his protected housing rights, including making multiple requests for a reasonable accommodation and filing a Fair Housing Complaint on Mr. Rosario's behalf.  (Doc. 1, ¶¶ 18, 23–24, 28–29, 33).  Plaintiff further states that Defendants erroneously denied her and Mr. Rosario's requests, wrongly refused to reconsider this denial in the face of new and corrected information, and used the Fair Housing Complaint as leverage to keep Mr. Rosario from receiving the accommodations he needed.  (*Id.* ¶¶ 18, 23–27, 30, 33–34).  As a result of Defendants' allegedly discriminatory and retaliatory conduct, Plaintiff states that she has been denied the right to aid her father in the exercise and enjoyment of his housing rights and has suffered mental anguish.  (*Id.* ¶¶ 69, 82).  An award of actual or punitive damages would remedy these injuries.  42 U.S.C. § 3613(c)(1); *see also Jeffrey*

*O. v. City of Boca Raton*, 511 F. Supp. 2d 1339, 1361 (S.D. Fla. 2007) (awarding nominal damages where, although the plaintiff suffered no quantifiable injury, the court found it important to hold the defendant responsible for its particular violation of the FHA). Plaintiff therefore meets the requirements of constitutional standing and states claims under the FHA and Florida FHA in her individual capacity.

    **C.**    **Whether the Complaint States Claims for Retaliation Under the FHA and Florida FHA**

OHA next moves to dismiss Count IV of the Complaint for failing to state FHA and Florida FHA retaliation claims on behalf of Mr. Rosario. OHA argues that Plaintiff fails to allege conduct which rises to the level of pervasiveness, severity, or egregiousness required of such claims. (Doc. 16, pp. 9–12).

The FHA and Florida FHA forbid coercion, intimidation, threats, or interference with one's exercise or enjoyment of a protected housing right. 42 U.S.C. § 3617; Fla. Stat. § 760.37. Pertinent to the allegations in this case, regulations developed by the Department of Housing and Urban Development and a review of the relevant case law reveal that a claim may arise under these statutory provisions in one of two ways. The first type of case is one where the defendant engages in discriminatory conduct that is so severe, pervasive, egregious, or hostile as to "have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1235 (M.D. Fla. 2003), *vacated on other grounds*, No. 8:02CV1955T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003). Cases asserting this type of claim have involved racially motivated firebombing, *Stirgus v. Benoit*, 720 F. Supp. 119, 123 (N.D. Ill. 1989), cross burning, *Wells v. Rhodes*, 928 F. Supp. 2d 920, 933 (S.D. Ohio 2013), sexual harassment, *Krueger v.*

*Cuomo*, 115 F.3d 487, 491 (7th Cir. 1997), and other extreme conduct the purpose of which is to deter targeted groups from exercising their right to housing.

Second, the statutes' proscriptions against coercion, intimidation, threats, and interference are also interpreted to prohibit "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400(c)(5). In this context, a plaintiff will state a claim by demonstrating that "(1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015) (per curiam) (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)). Unlike the first type of claim, it is not necessary for the defendant's adverse action to be pervasive, severe, egregious, or hostile; it is sufficient for the plaintiff to show that the defendant retaliated against him because of his statutorily protected activity. *See, e.g.*, *Housing Opportunities Project for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.*, No. 12-60172-Civ, 2012 WL 4193969, at *10 (S.D. Fla. Sept. 19, 2012) (finding that plaintiffs stated retaliation claim where they alleged that the defendants prohibited them from sitting on condominium association committee because plaintiffs filed a lawsuit alleging FHA violations); *Alley v. Les Chateaux Condo. Ass'n, Inc.*, No. 8:10-cv-760T-33TGW, 2010 WL 4739508, at *5–6 (M.D. Fla. Nov. 16, 2010) (finding that plaintiff stated retaliation claim where she alleged that the defendants mailed a disparaging letter to her neighbors because she filed a complaint with the Department of Housing and Urban Development).

Here, Plaintiff alleges sufficient facts which allow the Court to reasonably infer that OHA retaliated against Mr. Rosario for engaging in activity protected by the FHA and

Florida FHA. On August 16, 2013, Plaintiff and Mr. Rosario filed a Fair Housing Complaint against OHA for its failure to recognize Mr. Rosario as disabled and in need of a reasonable accommodation. (Doc. 1, ¶¶ 29, 83). On December 4, 2013, OHA received notice that it reached its decision in error and that Mr. Rosarios was, in fact, disabled. (*Id.* ¶¶ 33–34, 85). Notwithstanding this new information, OHA declined to reconsider its prior decision, refused to grant Mr. Rosario the accommodations he requested, and instead demanded that he restart the reasonable accommodations process, all despite OHA's policy requiring immediate consideration of a request for a reasonable accommodation and OHA's previous promise to reconsider its position upon Mr. Rosario winning his appeal with the Social Security Administration. (*Id.* ¶¶ 30, 33, 86–87, 89). Plaintiff asserts that OHA took the position it did to protect itself during the Department of Housing and Urban Development's investigation of the Fair Housing Complaint. (*Id.* ¶¶ 33–34, 89). Based on the conduct alleged, the Court can reasonably infer that OHA subjected Mr. Rosario to an adverse action by denying him a reasonable accommodation and that this adverse action was the result of his filing a Fair Housing Complaint against OHA. Count IV therefore states a claim for retaliation under the FHA and Florida FHA.

### D.     Whether Plaintiff Can Seek Certain Remedies

Finally, OHA and Henry move to dismiss certain remedies sought by Plaintiff. Specifically, OHA states that the FHA and Florida FHA do not permit the recovery of punitive damages from a municipality, (Doc. 16, pp. 12–13), and Henry asserts that Plaintiff cannot recover damages suffered by Plaintiff's family members who are not parties to this lawsuit, (Doc. 23, pp. 7–10). However, only claims for relief are subject to dismissal under Rule 12(b)(6) and, since a remedy is not a claim for relief, dismissal is not the appropriate vehicle for disposing of an improper or unavailable remedy requested

in a complaint.  *See Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).  Accordingly, the Court declines to examine the legal availability of any of Plaintiff's requested remedies at this time.[2]

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendants' motions to dismiss (Docs. 16, 23) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motions are **GRANTED** as to Plaintiff's individual capacity claims in Counts I and III.  Those claims are **DISMISSED**.
2. The motions are otherwise **DENIED**.
3. Defendants have **fourteen (14) days** from the date of this Order to answer the remainder of Plaintiff's Complaint.

**DONE AND ORDERED** in Orlando, Florida on May 13, 2016.

                                                                       PAUL G. BYRON
                                                                       UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

[2]   The Court notes that an improper or unavailable remedy requested in a complaint may be stricken pursuant to Rule 12(f).  *Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009).  However, no party has brought the issue to the Court's attention through a motion to strike and the Court declines to strike material from Plaintiff's Complaint on its own initiative.