### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STEPHANIE FERNANDEZ, individually
and in her capacity as Personal
Representative for the Estate of Samuel
Rosario,

       Plaintiff,

v.                                    Case No:  6:15-cv-1341-Orl-40DAB

ORLANDO HOUSING AUTHORITY,
RHONDA PIERCE, and ELLIS HENRY,

       Defendants.

_____

### <u>ORDER</u>

This cause comes before the Court on Defendants [Orlando Housing Authority's] and Rhonda Pierce's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 42), filed May 30, 2016. On June 9, 2016, Plaintiff responded in opposition. (Doc. 46). Upon consideration, Defendants' motion is denied.

## I.  BACKGROUND

On August 13, 2015, Plaintiff, Stephanie Fernandez, filed suit against the Orlando Housing Authority, Rhonda Pierce, and Ellis Henry, on behalf of herself and as the personal representative for the estate of her deceased father, Samuel Rosario. (Doc. 1). Mr. Rosario was a tenant of a Section 8 public housing complex reserved for elderly and disabled individuals. (*Id.* ¶ 12). In 2011, it was determined that the housing complex would be remodeled or demolished. (*Id.* ¶ 13). As a result, the Orlando Housing Authority ("OHA") was enlisted to assist the housing complex relocate its residents, including

Rosario. (*Id.*). OHA moved Mr. Rosario to a one-bedroom apartment on the third story of a privately-owned, tax credit, multi-family development. (*Id.* ¶ 14). After Mr. Rosario moved into the one-bedroom apartment, it was later discovered he suffered from legal blindness. (*Id.* ¶ 17). Plaintiff and Mr. Rosario repeatedly requested that Defendants move Mr. Rosario to a first-floor unit and be provided with a live-in aide due to his inability to safely live on the third floor of the apartment complex. (*Id.* ¶¶ 18–34). Defendants denied the requests, stating that Mr. Rosario did not qualify as disabled. (Id. ¶¶ 24–27, 33–34).

On March 19, 2014, Mr. Rosario fell in his apartment, causing injury to his head and bruising to his eyes. (*Id.* ¶ 35). Mr. Rosario was admitted to the hospital where he remained for nine days. (*Id.*). The day after Mr. Rosario returned home, he was found dead in his kitchen. (*Id.* ¶ 36). A police investigation and autopsy concluded that Mr. Rosario had hit his head after experiencing a seizure or fainting and that he died as a result. (*Id.* ¶¶ 36–37). Plaintiff alleges that Defendants' denial of Rosario's requests for a live-in aide and to move to a first-floor apartment violated federal law and contributed to his death. Consequently, Plaintiff asserts the following state and federal claims against Defendants: violation of the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796*l* ("Count I"); violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631 and the Florida Fair Housing Act ("Florida FHA") Fla. Stat. §§ 760.20–.37 ("Count II"); violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 ("Count III"); and retaliation under the FHA and the Florida FHA ("Count IV").

In September and October 2015, Defendants moved to dismiss Plaintiff's Complaint for the first time. (*See* Docs. 16, 23). The Court ultimately dismissed Counts I and II as to Plaintiff's individual capacity claims, but denied Defendants' motions to

dismiss as to the remaining Counts. (Doc. 36). Defendants OHA and Pierce (the "Movants") have now filed a second motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 42).

## II.   STANDARD OF REVIEW

Challenges to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms: facial attacks and factual attacks. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* Factual attacks, however, challenge the "existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). "In a factual challenge to subject matter jurisdiction, a district court can consider extrinsic evidence such as deposition testimony and affidavits." *Marod Supermarkets, Inc.*, 733 F.3d at 1335. The "district court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." *Id.* If a court finds at any point in the litigation that it lacks subject matter jurisdiction over an action, it must dismiss the complaint. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

## III.   DISCUSSION

In the instant suit, Movants factually attack the Court's subject matter jurisdiction. Movants assert that, although Plaintiff alleged in the Complaint that she is the personal representative of Mr. Rosario's estate, (*see* Doc. 1 ¶ 4), "discovery has revealed that

Plaintiff was not the appointed personal representative of the estate of Samuel Rosario as of the date that Plaintiff filed her Complaint." Plaintiff did not became the personal representative of Rosario's estate until March 31, 2016. (Doc. 42, p. 4). Therefore, Movants contend that Plaintiff had no standing to bring any claim on behalf of the estate on the date she filed her Complaint in this case and that Plaintiff's claims brought on behalf of the estate of Mr. Rosario are due to be dismissed for lack of subject matter jurisdiction. (Doc. 42, p. 7).

Plaintiff does not dispute that she was not the appointed personal representative of Mr. Rosario's estate at the time she filed the Complaint. In a sworn declaration, Plaintiff avers that when Mr. Rosario died, she was entrusted to open his estate. (*See* Doc. 46-1 ¶ 3). Plaintiff went to the Seminole County Clerk of Court and "completed a small estate affidavit." (*Id.* ¶¶ 3, 4). At that time, the probate clerk advised Plaintiff that she had completed the wrong paperwork, and that she needed a Summary Administration. (*Id.* ¶ 5). Plaintiff went to the court library where she was advised on the paperwork she needed to complete for the Summary Administration. (*Id.* ¶ 6). On the forms, Plaintiff was not allowed to list the pending litigation because the amounts were not known and the Summary Administration had to be less than $75,000 in asset value. (*Id.* ¶ 7). Plaintiff's siblings signed off on the Summary Administration and Plaintiff filed the Summary Administration with the state court. (*Id.* ¶ 8). At that time, Plaintiff believed that she was the personal representative of the estate and had the authority to file this lawsuit on its behalf. (Doc. 46, p. 5). Plaintiff did not realize that she had not opened the proper estate until after her deposition on March 25, 2016. (*See* Doc. 46-1, ¶¶ 3–9). Immediately upon discovering her error, Plaintiff retained an attorney, opened the correct estate, became

the approved personal representative on March 31, 2016, and obtained corrected letters of administration. (*Id.* ¶¶ 9–10).

Plaintiff contends that after she became the approved personal representative of Mr. Rosario's estate on March 31, 2016, she ratified the commencement of this action on the estate's behalf, and that the Court has subject matter jurisdiction over her suit. In support, Plaintiff cites *Hess v. Eddy*, 689 F.2d 977 (11th Cir. 1982).[1]

In *Hess*, an inmate of an Alabama count jail was brutally murdered by a fellow prisoner in November 1978. *Id.* at 979. On October 31, 1980, the inmate's widow brought a civil rights claim under 42 U.S.C. § 1983 against the local prison officials, alleging that her husband's death had been caused by the local prison officials' failure to provide safe and secure conditions of confinement. *Id.* The widow brought suit in two capacities: (1) as the inmate's widow, and (2) as the administratrix of his estate. *Id.* It was later discovered that the widow was not appointed the administratrix of her late husband's estate. *Id.* Therefore, the widow amended her original complaint to reflect her new status as administratrix and to indicate her ratification of the initial filing of suit. *Id.* Nonetheless, the defendants sought to dismiss the widow's claims on behalf of her husband's estate, arguing (1) that the widow could properly bring suit only after she had been appointed administratrix of her husband's estate, and (2) the widow had been appointed administratrix after the two-year limitations period had run and her action was therefore time barred. *Id.* The district court ultimately concluded that the widow's suit was time barred and dismissed the action. *Id.*

---

[1]   The Court notes that *Hess* was abrogated on other grounds by *Wilson v. Garcia*, 471 U.S. 261 (1985). The abrogation of *Hess* has been recognized by *Jones v. Preuit & Mauldin*, 876 F.2d 1480 (11th Cir. 1989) (en banc).

The district court held that only the real party in interest could properly bring a § 1983 action on behalf of the inmate's estate and, because the widow was not yet the administratrix at the time she filed her complaint, the action was not brought within the limitations period. *Id.* "In finding that the subsequent amendment and ratification by the [widow] did not relate back to the time of the initial filing, the district court relied upon Alabama state law which rejects the relation back doctrine in wrongful death actions." *Id.* at 979–80. The widow appealed.

The Eleventh Circuit held that that the district court "erred in applying Alabama's 'no relation back' rule in the face of a Federal Rule of Civil Procedure that expressly authorizes and adopts the 'relation back' doctrine."  As the Court explained:

> Rule 17(a) of the Federal Rules of Civil Procedure states that:
>
> > No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
>
> The plain language of the Rule clearly provides that when an action is brought by someone other than the real party in interest within the limitations period, and the real party in interest joins or ratifies the action after the limitations period has run, the amendment or ratification *relates back* to the time suit was originally filed and the action need not be dismissed as time barred.
>
> *          *          *
>
> We therefore conclude that Rule 17(a) sets forth a rule of procedure that is to be applied in the federal courts. The Rule provides that when an action is brought by someone other than the real party in interest, the suit need not be dismissed if the real party in interest subsequently joins or ratifies the action. The Rule further provides that such subsequent joinder or ratification by the real party in interest relates back to the time the suit was first filed. If

6

the initial filing came within the applicable limitations period, the suit is *not* time barred. Most importantly, the Rule is to be applied even where the courts of the forum state have rejected the "relation back" doctrine. For this reason, we must conclude that the district court erred in applying Alabama law on the question of whether the doctrine of "relation back" would apply in this case. This is a *federal* civil rights action, brought in a *federal* court, and it is the *Federal* Rules of Civil Procedure that must apply.

*Hess*, 689 F.2d at 980–81 (citation omitted).

The facts in *Hess* are materially similar to the facts of the present case, with one significant difference. Unlike Alabama, Florida does have a relation-back statute:

> The powers of a personal representative relate back in time to give acts by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring after appointment. A personal representative may ratify and accept acts on behalf of the estate done by others when the acts would have been proper for a personal representative.

Fla. Stat. § 733.601. Indeed, the Florida Supreme Court has held that "whenever letters of administration or testamentary are granted they relate back to the intestate's or testator's death" and "all previous acts of the representative which were beneficial in their nature to the estate and * * * which are in their nature such that he could have performed, had he been duly qualified, as personal representative at the time, are validated." *Griffin v. Workman*, 73 So. 2d 844, 846 (Fla. 1954) (citations and internal quotation marks omitted).

Defendants offer no argument why Plaintiff's eventual appointment as personal representative of Mr. Rosario's estate would not relate back to the time she filed the Complaint. Instead, Defendants simply argue that at the time the Complaint was filed, Plaintiff was not the personal representative and that the Court lacks subject matter jurisdiction as a result. However, it is clear that under both federal law and Florida law, once Plaintiff was appointed personal representative of Mr. Rosario's estate in March

2015, she ratified the commencement of this action on behalf of Mr. Rosario's estate, and such ratification relates back to the time the instant suit was filed.  Accordingly, the Court has subject matter jurisdiction over the claims Plaintiff has asserted on behalf of Mr. Rosario's estate.

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (Doc. 42) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 17, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record